UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA,  )<br>  )<br>v.  )<br>  )<br>(1) MICHAEL L. BABICH  )<br>(2) ALEC BURLAKOFF  )<br>(3) MICHAEL J. GURRY  )<br>(4) RICHARD M. SIMON  )<br>(5) SUNRISE LEE  )<br>(6) JOSEPH A. ROWAN  )<br>         Defendants.  )<br>_____ ) | CRIMINAL NO. 16-10343-ADB<br><br><br><br>**FILED UNDER SEAL** |

<u>UNITED STATES' MOTION FOR DETERMINATION OF CONFLICT
OF INTEREST OF ATTORNEY LEE STEIN AND, IF APPROPRIATE,
DISQUALIFICATION</u>

The United States of America, by its attorney, William D. Weinreb, Acting United States Attorney for the District of Massachusetts, moves this Court for a determination regarding a potential conflict of interest for Attorney Lee Stein, counsel for Defendant Sunrise Lee. Should the Court find that Attorney Stein has a conflict, the Court should take appropriate steps to determine whether Mr. Stein can continue representing Defendant Lee.[1]

---

[1] The United States has attempted to resolve the matter through discussions with counsel. While Mr. Stein has made a genuine effort to alleviate our concerns, including providing declarations from the individuals involved, we nonetheless are concerned that the matter may not be resolvable given the case law cited herein.

**STATEMENT OF FACTS**

BACKGROUND

Defendant, Sunrise Lee ("Lee"), is charged in three counts of a multi-count Indictment. Count 1 charges her with conspiracy to conduct and participate in the activities of a criminal enterprise, in violation of 18 U.S.C. § 1962(d) ("the RICO conspiracy"); Count 2, charges mail fraud conspiracy in violation of 18 U.S.C. § 1349 ("the mail fraud conspiracy") and Count 3, charges a conspiracy to violate the anti-kickback law in violation of 42 U.S.C. § 13201-7b(b)(2) and 18 U.S.C. § 371 ("the anti-kickback conspiracy").

Specifically, the Indictment alleges that Lee and her co-defendants used their positions at a pharmaceutical company by bribing doctors and lying to insurance companies, or by causing others to do so. It alleges that Lee held executive level management positions at the company when she, along with her co-defendants, fostered a scheme to bribe health care practitioners, many of whom ran pain clinics. Most of the bribes and alleged kickbacks were disguised as fees for marketing events, such as speaking events. However, the so-called speaking events were no such thing. In fact, they were primarily social events attended by friends and/or office staff of the practitioners. In exchange for paying the practitioners for these social events, Lee and her coconspirators required them to write large numbers of prescriptions for a Fentanyl Spray sold by the company. If they did not, the practitioners were not paid for additional events.

While the bribery scheme succeeded at generating new prescriptions, insurers and their agents were reluctant to approve payment for the drug when it was prescribed for patients without cancer, as the drug was only indicated for the management of breakthrough pain for patients with cancer. However, the potential for profits generated by the bribes could not be

fully realized unless insurers authorized payment. To insure payment was made, Lee directed her employees to send patient information to the company's Reimbursement Unit, a unit established by the company for the sole purpose of obtaining payment authorizations for the writers of the Fentanyl Spray. There, the employees of the company contacted payers to get authorization for payment. The employees were successful in doing so only by fraud. They hid their true identities from the payers or agents of the payers. Indeed, the company set up a phone system used by the employees, who disguised themselves as calling "from" the doctor's office or "with" or "on behalf of" a specific doctor and making misleading statements or omissions about the patient's diagnosis and/or other information. Based on this misleading/omitted information, the payers gave prior authorization for payment of the Fentanyl Spray, thus assuring that the prescription would be filled and the company would be profitable.

WITNESSES INVOLVING POTENTIAL CONFLICT

Prior to the indictment in this case, Attorney Stein represented two witnesses, ▓▓▓ and ▓▓▓, both of whom were employees of the company. ▓▓▓ remains a current employee. These witnesses provide pieces of testimony involving the mail fraud scheme, which is one of several predicate acts in the RICO conspiracy. Attorney Stein recently proposed to the government that his representation of Lee continue because Witnesses ▓▓▓ and ▓▓▓ consented to his conditional continued representation (under specific conditions) and Lee consented to Attorney Stein's representation under those conditions. Together with his proposal, Attorney Stein has provided the sworn declarations of ▓▓▓ and Lee. The conditions as put forth to the government are that: 1) Attorney Stein will not communicate to Lee any information he learned in the course of his representation of the Witnesses ▓▓▓ 2) if the case proceeds to trial, local co-counsel, Peter Ball, will conduct their cross-examination;

and, 3) Attorney Stein will not share with Attorney Ball any information Attorney Stein learned from his representation of Witnesses ███████.

WITNESS ███████



▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

WITNESS ▇▇▇▇▇▇

Witness ▇▇▇ gave a sworn statement ▇▇▇▇▇▇▇▇▇▇ in this matter during the investigation. Attorney Stein appeared on behalf of ▇▇▇▇ and Attorney Geoffrey Hobart appeared on behalf of the company, in order to safeguard any potential privileged communication to which ▇▇▇▇ may have been privy. ▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇



## ARGUMENT

It is likely that both of these witnesses will testify at trial. The Massachusetts Rules of Professional Conduct govern a lawyer's responsibilities to his client in this district and are necessarily involved in this Motion. As discussed below, an actual conflict of interest exists for Attorney Stein in his continued representation of Lee because of his prior attorney-client relationship with ▓▓▓ and ▓▓▓ who will be called to testify in the government's case-in-chief against each of the defendants at trial. The concomitant competing obligations that Attorney Stein owes to Lee and these potential witnesses requires the attention of this Court.

### A. The Attorney-Client Relationship Existed

The attorney-client relationship begins when a prospective client first approaches an attorney with the purpose of obtaining legal advice. In re Grand Jury Proceedings (Pavlick), 663 F.2d 1057, 1060 (5th Cir. 1981) ("Once the individual told Pavlick about his legal problem . . . the attorney-client relationship, for the purposes of establishing the privilege, came into being."). A person need not pay or retain an attorney to enjoy a privileged attorney-client relationship with that attorney. Westinghouse Elec. Corp. v. Kerr-McGee Corp., 580 F.2d 1311, 1317 (7th Cir. 1978). Once an attorney-client relationship has been established, an attorney may not use confidential communications made during the course of that relationship to the detriment of that client even after either party terminates the attorney-client relationship. See Swindler & Berlin v. United States, 524 U.S. 399, 405 (1998).

There is no question that an attorney-client relationship existed between ▮ and Attorney Stein and between ▮ and Attorney Stein. Both witnesses and Attorney Stein represented as such to the undersigned, and appeared on their behalf during witness interviews and testimony.

B. **The Conflict in This Case**

When evaluating conflicts in a criminal proceeding, courts balance a defendant's interest in selecting the counsel of her choice with her competing interest in retaining an attorney with undivided loyalties. Wheat v. United States, 486 U.S. at 158-59. The Supreme Court recognized that "while the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." Id. at 159. For this reason, district courts have broad discretion to disqualify attorneys "not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists." Id. at 163.

The Massachusetts Rules of Professional Conduct caution that an attorney's representation of multiple clients in the same proceeding creates a conflict of interest. Rule 1.7(a) provides that "a lawyer shall not represent a client if the representation involves a concurrent conflict of interest," including where the representation will be directly adverse to another client. Comment 1 makes clear that this rule applies to a former client. Rule 1.9(a) limits an attorney from representing a client when the attorney formerly represented another client in the same or a substantially related matter when the interests of that person are materially adverse to the former client unless the former client consents after consultation. Mass. R. Prof'l Conduct 1.7 and 1.9(a).

There are several reasons for Courts to avoid attorney conflicts of interest. Federal courts are responsible for ensuring that criminal trials are "conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." Wheat, 486 U.S. at 160. Attorneys who give advice to clients with adverse interests in the same proceeding risk divulging confidential information obtained through the attorney-client relationship. Id. at 1025. They may also fail to provide these clients with the effective and vigorous representation required by the Sixth Amendment. United States v. O'Malley, 786 F.2d 786, 792-93 (7th Cir. 1986). Finally, district courts have an interest in insulating their fairly rendered verdicts from appellate reversal for ineffective assistance of counsel. Wheat, 486 U.S. at 162. Each of these reasons is implicated in this case.

While permitting an attorney to provide legal advice to multiple parties in the same case is not a *per se* violation of ethical guidelines or constitutional guarantees, Holloway v. Arkansas, 435 U.S. 475, 482-91 (1978), a court confronted with such a potential conflict of interest is bound to inquire into the particular circumstances to determine whether the attorney should be disqualified. United States v. Santiago-Lugo, 167 F.3d 81, 84 (1st Cir. 1999). District courts examine the nature and extent of the attorney's relationship with the clients and whether the clients' interests are adverse. See United States v. Lemieux, 532 F. Supp.2d 225, 233-34 (D. Mass. 2008); United States v. Delevo, 2002 U.S. Dist. LEXIS 7893, at *16 (D. Mass. 2002).

The First Circuit has ruled that defense counsel should be disqualified when there is a "direct link between the clients of an attorney – or at least some concrete evidence that one client, such as an immunized witness, has information about another client, such as a target of a grand jury investigation." In re Grand Jury Proceedings (Doe), 859 F.2d 1021, 1026 (1st Cir. 1988). The court emphasized that if defense counsel learns that a witness he has advised is capable of

incriminating the defendant, but fulfills his duty of loyalty to the witness by encouraging him to testify fully, the attorney thereby compromises his duty of loyalty to the defendant. Id. at 1025.

Other Circuit Courts have similarly acknowledged the inevitable conflict of interest that arises when defense counsel has previously rendered legal advice to a government witness whose testimony could inculpate the defendant. See United States v. Elliot, 444 F.3d 1187, 1194 (9th Cir. 2006) (disqualifying defense counsel because the interests of the defendant and the witness were "clearly adverse"); United States v. Moscony, 927 F.2d 742, 750 (3rd Cir. 1991) (disqualifying defense counsel because "an attorney who cross-examines former clients inherently encounters divided loyalties"); United States v. Kelly, 870 F.2d 854, 857 (2nd Cir. 1989) (disqualifying defense counsel because there was "no guarantee" that the defendant's interests could be served without vigorous cross-examination of the witness in a manner inconsistent with the witness's interests).

The District Courts in Massachusetts have followed the example set by the Circuit Courts in situations involving a defense attorney's previous relationship with a government witness. In Delevo, the court disqualified defense counsel because he had previously represented a government witness in an unrelated criminal matter. 2002 U.S. Dist. LEXIS 7893, at *12-16. The court in Lemieux similarly disqualified defense counsel, reasoning that the attorney might use confidential information to the disadvantage of the witness or fail to rigorously cross-examine the witness to the detriment of the defendant. 532 F. Supp. 2d at 230.

In this case, Attorney Stein has an attorney-client relationship with three adversely positioned clients: Lee, a defendant, and ▓▓▓▓ and ▓▓▓▓ two government witnesses whose testimony inculpates Lee. Unlike the witness in In re Grand Jury Proceedings (Doe), these witnesses ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

████████, thus satisfying the First Circuit's "direct link" requirement. 859 F.2d at 1026. Whether or not ████████████████████████████████████████ the witnesses and Lee had contact with each other during the conspiracy is of no matter. The two witnesses are intertwined among the Lee and her defendants and the unindicted co-conspirators. They have knowledge about the conspiracy. ████████████████████ ████████████████████████████ the Court should consider whether Attorney Stein should be disqualified from further representing her in this case.

### C. Alternative Measures Other Than Disqualification Are Inadequate

The United States is concerned that alternative measures such as conflict waivers or using local co-counsel for the sole purpose of cross-examining these witnesses at trial may not be sufficient in this case because of the nature of the conflicts of interest and the importance of the testimony of ██████ and ██████. Specifically, the United States notes two concerns:

First, while clients may choose to waive the right to conflict-free representation, such waivers do not automatically cure all problems created by multiple representation. See Wheat, 486 U.S. at 160 (refusing to adopt a strict rule that client waivers resolve attorney conflicts of interest as a matter of law). It may be difficult for defendants to make an informed decision in this situation, as it is impossible for them to know in advance the exact content of the witness's testimony even in a case such as this. See Doe, 859 F.2d at 1025. If the Court finds that Attorney Stein has both an actual and potential conflict of interest in this case, it is possible that such conflict would prevent Attorney Stein from providing effective assistance of counsel.

Second, allowing local co-counsel, Peter Ball, who has filed a "limited" appearance on behalf of Defendant Lee, conduct the cross-examinations of Witnesses ████████████ may

not adequately cure the actual conflict of interest in this case.[3] While Attorney Stein may not be the one actually asking the questions, he could use confidential information obtained through his prior attorney-client relationship with the witnesses to influence Mr. Ball's questioning of the witness, intentionally or not. See United States v. Cheshire, 707 F. Supp 235, 240 (MD La. 1989) (finding it "almost impossible . . . for a lawyer to participate throughout the course of a trial but not suggest a single question or style for cross examination of the most important witness against his present client"). Indeed, if Attorney Stein becomes aware that the witness on the stand makes a misstatement during the testimony based upon the witness's previous confidential communication, will he be required to sit idly by as Attorney Ball pursues an erroneous path of inquiry? Further, as the court in Cheshire stated, "[a]t the very least, in order to represent his present client [the attorney] must be completely free and unfettered to analyze, characterize and repudiate the testimony of his former client in closing argument." Id. at 240. Federal courts have been hesitant to use the remedy suggested by Attorney Stein and this court likewise should decline to do so. See e.g., Delevo, 2002 U.S. Dist. LEXIS 7893, at *14 n.5 (rejecting defendant's suggestion that a co-counsel could assist defense counsel at trial to avoid defense counsel's complete disqualification),

Moreover, one can easily envision an appeal after conviction claiming ineffective assistance of counsel based on the waived conflict and retention of substitute counsel to cross examine these witnesses. See Wheat, 486 U.S. at 161-62 (noting need to investigate potential

---

[3] The notice of appearance filed by Attorney Ball (Docket No. 16) indicates a "limited" appearance for the purpose of Defendant Lee's initial appearance. Neither Attorney Stein nor Attorney Ball have made any representations as to whether or not Attorney Ball's representation extends past the limited appearance, but Mr. Ball attended the interim status conference on June 19, 2017 on behalf of Lee, along with her Arizona counsel by telephone.

conflicts to ensure finality of criminal judgments and risk of assertions of error for ruling either way).

## CONCLUSION

The Supreme Court held in <u>Wheat</u> that "the district court must be allowed substantial latitude in refusing waivers of conflicts of interest not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon in to an actual conflict as the trial progresses." <u>Wheat</u>, 486 U.S. at 163. There is clear precedent upholding the decisions of Federal courts been willing to disqualify attorneys with actual or potential conflicts of interest regardless of client waivers. <u>See</u> <u>United States v. Lanoue</u>, 137 F.3d 656, 663-64 (1st Cir. 1998) (disqualifying defense counsel despite defendant and attorney waivers of their right to conflict-free representation because defense counsel's prior representation of the witness posed a serious potential conflict of interest); <u>Lemieux</u>, 532 F. Supp. 2d at 232 (disqualifying defense counsel despite defendant and witness waivers of their right to conflict-free representation because defense counsel's prior representation of the witness posed a serious potential conflict of interest).

Based upon the foregoing, the United States respectfully requests the Court to make a determination as to whether Attorney Stein should be disqualified in this matter. If the Court determines that notwithstanding the conflict, Attorney Stein should be permitted to continue representing Defendant Lee, the Government respectfully requests that the Court question Defendant Lee on the record to ensure that her consent is knowing and voluntary.

Respectfully submitted,

WILLIAM D. WEINREB
Acting U.S. Attorney

By: _____
SUSAN M. POSWISTILO (BBO #565580)
K. NATHANIEL YEAGER (BBO 3630992)
Assistant U.S. Attorneys
Office of the U.S. Attorney
John J. Moakley Federal Courthouse
One Courthouse Way, Ste. 9200
Boston, MA 02210
(617) 748-3100
nathaniel.yeager@usdoj.gov
susan.poswistilo@usdoj.gov