UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA </br></br> v. </br></br> JOHN N. KAPOOR, et al., </br></br> Defendants. | Court No.: 16-cr-10343-7-ADB |

## GOVERNMENT'S OPPOSITION TO DEFENDANT JOHN KAPOOR'S MOTION FOR MODIFICATION OF BAIL TERMS

The United States of America hereby opposes Defendant John Kapoor's Motion for Modification of Bail Terms (hereinafter "the Motion"), which seeks to remove a condition of release requiring electronic monitoring. As grounds for this opposition, the United States submits the following.

### Background

On October 24, 2017, a Grand Jury returned an indictment charging the Defendant John Kapoor ("Kapoor") and six other former corporate executives, with crimes related to bribing prescribers and defrauding insurers in order to profit from selling a rapid onset opioid manufactured by their company. Kapoor is charged with four felony counts, including Racketeering Conspiracy (count 1), Mail Fraud Conspiracy (count 2), Wire Fraud conspiracy (count 3) and Conspiracy to Violate the Anti-kickback Law (count 4). Three of the four counts faced by Kapoor carry maximum penalties of 20 years' imprisonment.

Following his arrest, Kapoor appeared before the Honorable United States Magistrate Judge Michelle H. Burns in the District of Arizona. The United States and Kapoor requested conditions of release, which were ordered by the Court. Specifically, the conditions included (1)

a $1,000,000 cash bond, (2) surrender of all travel documents, (3) certain travel restrictions, and (4) electronic monitoring technology chosen by the assigned pre-trial services officer. (Docket No. 230). At the conclusion of the hearing, Kapoor posted a $1,000,000 cash bond and was immediately released. Sometime following his release, pursuant to the conditions of release, Kapoor was fitted with an ET1 bracelet using active GPS monitoring.

## **Law and Argument**

1. <u>Kapoor's Motion ignores any alternatives</u>.

The record of the Defendant's initial appearance in Arizona is inconsistent. The Rule 5 Waiver signed by the Defendant and his counsel does not waive the defendant's right to a detention hearing. (see, Docket No. 230, Entry No. 6, Case No. 17-00502-MHB (D. AZ)). The docket entry for the Defendant's appearance in Arizona, however, explicitly states, "Detention Hearing held. Defendant ordered released on a million dollar cash bond with additional conditions." (Docket No. 230, Entry 3 of case No. 17-00502-MHB). Upon further reflection, the United States considers this to be a Motion to Modify, just as put forth by Kapoor, and it does not contest that the instant court has jurisdiction to consider the merits of this motion. Regardless, Kapoor has not put forth any changed circumstances that would warrant the granting of this motion.

Determinations regarding bail are governed by 18 U.S.C. § 3142. Kapoor's Motion makes a series of assertions regarding modification, most of which focus on the factors found in 18 U.S.C. § 3142(g).

In making the determination whether "any condition or combination of conditions will reasonably assure the appearance of the [defendant] as required and the safety of any other person and the community," the Bail Statute required Judge Burns to consider the following factors:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of

terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
(2) the weight of the evidence against the person;
(3) the history and characteristics of the person, including—
   (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
   (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release . . .

18 U.S.C. § 3142(g).

Kapoor points out that he has no prior record, and is a citizen of the United States with long standing ties to Phoenix, Arizona Defendant's Motion at 1-2. He asserts that he has maintained his home in Phoenix despite being "conscious of the possibility that the Government might choose to bring serious criminal charges against him." Defendant's Motion at 5.[1] Kapoor argues that he stands to lose substantial assets if he flees. Defendant's Motion at 4.[2] Last, he asserts that the allegations against him are "thin, vague, and conclusory." Defendant's Motion at 5.[3]

While the United States disputes several of the assertions made by Kapoor in more detail below, all of his arguments were available to him when he agreed to the conditions imposed by Judge Burns. Kapoor now offers no change in conditions or facts, other than the assertion that,

---

[1] In support of this argument, the Defendant cites a case from this district, United States v. Simone, 317 F. Supp. 2d 38, 49 (D. Mass. 2004), for the proposition that the Defendant's decision not to flee despite knowing he was the target of an investigation suggests he is not a serious risk of flight. It is worth noting that, while it is true that the court in the Simone case released defendants charged with racketeering pending trial, the court did so only after requiring each of those defendants to submit to 24 hour a day home confinement with electronic monitoring. Simone, 317 F. Supp. 2d at 50-51.
[2] An argument, which at its heart, presumes that a risk of flight does not exist for wealthy defendant.
[3] The Defendant makes this assertion despite not having received discovery.

he "is a daily jogger, and the cumbersome bracelet makes it virtually impossible for him to run." Defendant's Motion at 3.

The conditions of release do not preclude exercise. In seeking to modify, Kapoor's Motion blatantly ignores his previous agreement, suddenly treating his ability to jog as a talisman, as if there are no other forms of exercise available to him. Clearly there are, and clearly he can afford any exercise equipment he believes he needs if he wishes to maintain a healthy lifestyle.

As a condition of release under 18 U.S.C. § 3142(g), Judge Burns chose electronic monitoring in order reasonably assure the appearance of the defendant at trial. Kapoor asserts that this Court should negate that measured finding, not because of a new fact unavailable to Judge Burns at the time of his initial appearance, but because the bracelet is "cumbersome" when Kapoor jogs. When determining whether to modify the conditions of release, there is much more at stake than Kapoor's ability to jog comfortably. The conditions imposed by Judge Burns reflect a balanced effort to preserve his liberty while ensuring his appearance at trial.

2. <u>Factors that justify electronic monitoring:</u>

In addition to argument above, the United States disputes Kapoor's regarding (a) the strength of the evidence against him, and (b) the import of his finances.

   a. Weight of the Evidence

As described above, 18 U.S.C. § 3142(g)(2), provides that the "weight of evidence against" the Defendant is a factor to be considered when determining whether to impose conditions of release. See <u>United States v. Rice</u>, 2006 WL 1687749, at *2 (W.D. Ky. Jun. 19, 2006) (noting that "strong evidence against a person could increase their risk of flight because they believe they are likely to be convicted").

Kapoor tightly controlled the criminal enterprise alleged in this case. A document filed by the company with the Securities and Exchange Commission (S.E.C.) describes the level of control held by Kapoor. The publicly filed document warned prospective investors that the company's "founder and principal stockholder can individually control our direction and policies, and his interests may be adverse to the interests of our stockholders. By virtue of his holdings, Dr. Kapoor can and will continue to be able to effectively control the election of the members of our Board of Directors, our management and our affairs. . . "

Evidence developed during the investigation of this case proves that Kapoor agreed with other co-defendants and co-conspirators to profit by bribing physicians and subverting the suspicious ordering requirements of the DEA. Witness statements, as well as documents, demonstrate that Kapoor knew about and approved bribing practitioners to write prescriptions.

Evidence of Kapoor's knowledge and direction exists both in writing and from witness statements. Kapoor was told on several occasions that speaker honoraria was used to bribe practitioner's to write prescriptions. He received several emails informing him that doctors were bribed with speaker honoraria. Moreover, Kapoor attended a meeting in February 2014 at which two prescribers were explicitly offered bribes. During and after the same meeting, Kapoor approved eliminating wholesalers from the company's supply chain in in order to subvert the scrutiny of the DEA.

Nevertheless, when the bribes worked, Kapoor directly escalated the amount of money spent of speaker honoraria. He approved spending $550,000 on speaker honoraria during the last 5 months of 2012; $2.5 million on speaker honoraria in 2013; and $10.5 million on speaker honoraria in 2014.

Whether measured by volume or form, the weight of the evidence against John Kapoor creates a significant risk of flight.

b. Financial Resources

The Bail Statute provides that the history and characteristics of the defendant including, "the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, [and] community ties …" are also among the factors to be considered when determining whether to impose conditions of release. 18 U.S.C. § 3142(g) (3) (A).

John Kapoor owned 31,516,625 shares of company called Akorn, Incorporated.[4] In April 2017, another corporation acquired Akorn by agreeing to pay $34.00 per share of common stock.[5] These public filings make clear that the value of Akorn Inc. stock owned by Kapoor and trusts in which he is the trustee and/or beneficiary, exceeds $1 billion. Put simply, Kapoor's financial resources appear to be unlimited.

Contrary to the assertions made by counsel for Kapoor, the United States does not seek to penalize him for being wealthy. It is instead concerned Kapoor will flee, as it is clear, given his resources, his flight from this country is much easier to accomplish and his ability to live a comparable lifestyle out of the United States is sustainable.[6]

---

[4] See https://www.sec.gov/Archives/edgar/data/3116/000114420417023676/v465722_sc13d-a.htm
[5] See https://www.sec.gov/Archives/edgar/data/3116/000095015717000500/form8k.htm
[6] Other wealthy individuals in this District have done exactly that. See, https://www.bostonglobe.com/business/2015/06/23/carlos-wanzeler-fugitive-telexfree-principal-speaks-out/A83AUzVySiNOly5jg4borJ/story.htm, an article about a fugitive residing in Brazil, Carlos Wanzeler (Case No. 14-40028-TSH) and describing the United States' difficulties in bringing him back to the country.

## CONCLUSION

For the above reasons, the United States respectfully requests that the Court deny the Motion.

          Respectfully submitted,

          FOR THE UNITED STATES:

          WILLIAM D. WEINREB
          Acting U.S. Attorney

By:   /s/ *K. Nathaniel Yeager*
       K. NATHANIEL YEAGER (630992)
       SUSAN M. POSWISTILO (BBO #565581)
       Assistant U.S. Attorneys
       Office of the U.S. Attorney
       John J. Moakley Federal Courthouse
       One Courthouse Way, Ste. 9200
       Boston, MA 02210
       NY:   (617)748-3311
       SMP:  (617) 748-3103
       nathaniel.yeager@usdoj.gov
       susan.poswistilo@usdoj.gov

## Certificate of Service

I hereby certify that the foregoing document filed through the ECF system will be sent electronically to counsel for the defendant.

          By:   /s/ K. Nathaniel Yeager
                   K. NATHANIEL YEAGER
                   Assistant United States Attorney

Dated: November 16, 2017