1                    UNITED STATES DISTRICT COURT

2                      DISTRICT OF MASSACHUSETTS

3    _____

4    UNITED STATES OF AMERICA,

5                        Plaintiff,          Criminal Action
                                             No. 16-CR-10343-ADB-2
6    v.
                                             November 28, 2018
7    ALEC BURLAKOFF,
                                             Pages 1 to 32
8                        Defendant.

9    _____

10

11
                       TRANSCRIPT OF RULE 11 HEARING
12           BEFORE THE HONORABLE ALLISON D. BURROUGHS
                     UNITED STATES DISTRICT COURT
13                 JOHN J. MOAKLEY U.S. COURTHOUSE
                           ONE COURTHOUSE WAY
14                       BOSTON, MA  02210

15

16

17

18

19

20

21                     JOAN M. DALY, RMR, CRR
                        Official Court Reporter
22                 John J. Moakley U.S. Courthouse
                    One Courthouse Way, Room 5507
23                       Boston, MA  02210
                       joanmdaly62@gmail.com

24

25

APPEARANCES:


FOR THE GOVERNMENT:

            FRED M. WYSHAK, JR.
            K. NATHANIEL YEAGER
            DAVID G. LAZARUS
            Assistant U.S. Attorneys
            United States Attorney's Office
            John Joseph Moakley Federal Courthouse
            1 Courthouse Way
            Suite 9200
            Boston, Massachusetts 02210
            617.748.3100
            fred.wyshak@usdoj.gov
            Nathaniel.Yeager@usdoj.gov
            mark.quinlivan@usdoj.gov
            susan.poswistilo@usdoj.gov
            david.daddio@usdoj.gov
            david.lazarus2@usdoj.gov


FOR THE DEFENDANT ALEC BURLAKOFF:

            GEORGE W. VIEN
            PETER E. GELHAAR
            JOSHUA N. RUBY
            Donnelly, Conroy & Gelhaar, LLP
            260 Franklin Street
            Suite 1600
            Boston, Massachusetts 02110
            617.720.2880
            gwv@dcglaw.com
            peg@dcglaw.com
            jnr@dcglaw.com

P R O C E E D I N G S

1

2          (The following proceedings were held in open

3    court before the Honorable Allison D. Burroughs, United

4    States District Judge, United States District Court, District

5    of Massachusetts, at the John J. Moakley United States

6    Courthouse, One Courthouse Way, Boston, Massachusetts, on

7    November 28, 2018.)

8          THE CLERK:  All rise.  Court is in session.  Please

9    be seated.  Will counsel identify yourselves for the record.

10          MR. WYSHAK:  Yes, Your Honor.  Good morning.  Fred

11    Wyshak, Dave Lazarus and Matt Yeager for the United States.

12          MR. VIEN:  Good morning, Your Honor.  George Vien,

13    Peter Gelhaar and Josh Ruby for the defendant Alec Burlakoff.

14          THE COURT:  All right.  I understand we are here

15    for a change of plea for Mr. Burlakoff, correct?

16          MR. WYSHAK:  That's correct, Your Honor.

17          THE COURT:  No plea agreement, right?

18          MR. WYSHAK:  There's no plea agreement.  There is a

19    cooperation agreement.

20          THE COURT:  Karen, do you want to swear

21    Mr. Burlakoff, please.

22          (ALEC BURLAKOFF duly sworn by the Deputy Clerk.)

23          THE COURT:  Mr. Burlakoff, you are now under oath.

24    That means if you answer any of my questions falsely, your

25    answers can be used against you later in a subsequent

1    prosecution for perjury for making a false statement.  Do you

2    understand that?

3             THE DEFENDANT:  Yes, Your Honor.

4             THE COURT:  You are surrounded by lawyers.  They

5    are your lawyers, and they are there to help you.  If at any

6    point during these proceedings you want to stop and talk to

7    them or consult with them, you just let me know.  That's what

8    they're there for.  You should fully avail yourself of the

9    opportunity if you feel the need to consult with them at all.

10   Okay?  Your full name, please.

11            THE DEFENDANT:  Alec Burlakoff.

12            THE COURT:  How old are you.

13            THE DEFENDANT:  44.

14            THE COURT:  How far did you go in school?

15            THE DEFENDANT:  Graduate level.  Masters in social

16   work.

17            THE COURT:  I take it from our conversation so far

18   that you speak and understand English?

19            THE DEFENDANT:  Yes, Your Honor.

20            THE COURT:  Are you a citizen of the United States?

21            THE DEFENDANT:  Yes, Your Honor.

22            THE COURT:  Have you been recently treated for or

23   diagnosed with any mental illness, psychiatric or

24   psychological problem of any kind?

25            THE DEFENDANT:  Yes.

1          THE COURT:  Can you tell me about that, please.

2          THE DEFENDANT:  Depression and anxiety.

3          THE COURT:  Are you taking any medication for those

4    things.

5          THE DEFENDANT:  Yes.

6          THE COURT:  When was the last time you took any of

7    that medication?

8          THE DEFENDANT:  This morning.

9          THE COURT:  Can you tell me what kind of medicine

10   you're taking?  I don't mean this to be intrusive, but I want

11   to make sure you're thinking clearly enough to go through the

12   plea today.

13         THE DEFENDANT:  Yes, Your Honor.  I'm taking Prozac

14   and I'm taking Klonopin.

15         THE COURT:  And does that medicine affect your

16   ability to think clearly?

17         THE DEFENDANT:  No, Your Honor.

18         THE COURT:  You fully understand why we're here

19   today?

20         THE DEFENDANT:  Yes, Your Honor.

21         THE COURT:  Are you having any trouble

22   understanding my questions?

23         THE DEFENDANT:  No, Your Honor.

24         THE COURT:  Have you recently been treated for or

25   diagnosed with any drug addiction, drug problem or alcohol

1    problem of any kind?

2            THE DEFENDANT:  No.

3            THE COURT:  As we sit here today other than the two

4    drugs you just told me about, are you under the influence of

5    any medication, drug, or alcoholic beverage?

6            THE DEFENDANT:  No.

7            THE COURT:  Are you having any symptoms of

8    withdrawal or any cravings that are affecting your ability to

9    think clearly today?

10            THE DEFENDANT:  No, Your Honor.

11            THE COURT:  And no trouble understanding my

12    questions?

13            THE DEFENDANT:  No.

14            THE COURT:  I think we just covered this, but you

15    understand why we're here today?

16            THE DEFENDANT:  Yes.

17            THE COURT:  Counsel for the government, any

18    reservations about going forward today in terms of his

19    competency?

20            MR. WYSHAK:  No, Your Honor.

21            THE COURT:  Mr. Gelhaar, Mr. Vien?

22            MR. VIEN:  We don't have any reservations, Your

23    Honor.

24            THE COURT:  Okay.  Mr. Burlakoff, have you received

25    a copy of the charges currently pending against you which are

1    in the second superseding indictment?

2              THE DEFENDANT:  Yes, Your Honor.

3              THE COURT:  And you understand you're charged with

4    one count of 18 U.S.C. 1962(d) which is a racketeering or

5    RICO conspiracy?

6              THE DEFENDANT:  Yes.

7              THE COURT:  Have you had the opportunity to fully

8    discuss those charges with your counsel?

9              THE DEFENDANT:  Yes, I have.

10             THE COURT:  Because there's no plea agreement, I

11   just want to make sure that counsel has communicated to

12   Mr. Burlakoff any formal plea agreements that have been

13   offered by the government.

14             MR. VIEN:  Yes, Your Honor.  No plea agreements

15   were offered by the government in this case.

16             THE COURT:  Okay.  And Mr. Burlakoff, are you fully

17   satisfied with the counsel, representation and advice you've

18   gotten in this case from your lawyers?

19             THE DEFENDANT:  Yes.

20             THE COURT:  All right.  You're pleading guilty

21   today with no plea agreement.  You understand you have no

22   plea agreement with the government.  We'll get to the

23   cooperation agreement, but you have no plea agreement with

24   the government.

25             THE DEFENDANT:  Yes.

1          THE COURT:  Do you understand you're basically

2     pleading guilty with no deal with them other than the

3     cooperation agreement?

4          THE DEFENDANT:  Yes.

5          THE COURT:  Has anyone made you any promises of any

6     kind to get you to plead guilty here today?

7          THE DEFENDANT:  No.

8          THE COURT:  Is anyone forcing you to plead guilty?

9          THE DEFENDANT:  No.

10          THE COURT:  Are you pleading guilty of your own

11     free will and because you are, in fact, guilty?

12          THE DEFENDANT:  Yes, I am.

13          THE COURT:  Do you understand that the offense to

14     which you're pleading guilty here today is a felony?

15          THE DEFENDANT:  Yes.

16          THE COURT:  Do you understand if I accept your

17     plea, you'll be judged guilty of a felony?

18          THE DEFENDANT:  Yes.

19          THE COURT:  You understand if I accept your plea

20     and we go forward with this today, once you're judged guilty

21     of a felony, you lose or you may lose certain civil rights,

22     those include things like the right to vote, the right to

23     hold office, the right to serve on a jury, and the right to

24     possess a firearm.

25          Do you understand all that?

1          THE DEFENDANT:  Yes, I do.

2          THE COURT:  Any tax consequences anticipated or do

3     you want me to colloquy him on it?

4          MR. WYSHAK:  None that I'm aware of, Your Honor.

5          THE COURT:  Better safe than sorry.  Mr. Burlakoff,

6     the government is not currently aware of any potential civil

7     tax consequences.  If there are things like back taxes,

8     penalties and interest, those would be imposed by the IRS

9     separate from this proceeding.

10          Do you understand that?

11          THE DEFENDANT:  Yes, I do.

12          THE COURT:  Mr. Wyshak, the maximum penalties,

13     please.

14          MR. WYSHAK:  Yes, Your Honor.  Conviction for

15     racketeering conspiracy carries a maximum penalty of 20 years

16     incarceration, $250,000 fine or twice the gain, if that's

17     greater, a period of three years supervised release, and

18     forfeiture as alleged in the indictment.

19          MR. VIEN:  There's also a $100 mandatory assessment

20     of course.

21          THE COURT:  Yes.  Thank you, Mr. Vien.

22          MR. WYSHAK:  Thank you, George.

23          THE COURT:  Mr. Burlakoff, you understand that

24     assuming you plead guilty here today that I will have the

25     power to give you a term of imprisonment of up to 20 years?

1          THE DEFENDANT:  Yes, I do.

2          THE COURT:  Do you understand that in addition to a

3     prison term, I will have the power to give you a term of

4     supervised release of up to three years?

5          THE DEFENDANT:  Yes.

6          THE COURT:  Do you understand that if you're

7     subject to supervised release and you violate the conditions

8     of your supervised release you can receive additional time in

9     prison?

10          THE DEFENDANT:  Yes.

11          THE COURT:  Do you understand that I also have the

12     power to fine you up to $250,000 or two times the pecuniary

13     loss or gain associated with the offense?

14          THE DEFENDANT:  Yes.

15          THE COURT:  Do you understand that by pleading

16     guilty there may be forfeiture consequences, that there may

17     be property you'll be required to forfeit to the United

18     States?

19          THE DEFENDANT:  Yes.

20          THE COURT:  Do you understand that I may order you

21     to pay restitution to any victim of your offense?  In other

22     words, I could require you to pay money to compensate any

23     victims for any harm that you've caused?

24          THE DEFENDANT:  Yes.

25          THE COURT:  Do you understand that in addition to

1   all that you'll be required to pay a $100 special assessment?

2           THE DEFENDANT:  Yes.

3           THE COURT:  Just to make sure we have them all, all

4   the possible consequences of pleading guilty, incarceration,

5   supervised release, fine, special assessment, loss of civil

6   rights, possible tax consequences, possible restitution,

7   possible forfeiture.

8           Do you understand all those?

9           THE DEFENDANT:  Yes.

10          THE COURT:  Do you have any questions about any of

11  those?

12          THE DEFENDANT:  No, Your Honor.

13          THE COURT:  I want to talk to you a little bit

14  about the sentencing guidelines and how they can affect your

15  sentence.  The sentencing guidelines were promulgated by the

16  United States Sentencing Commission for judges to follow when

17  determining an appropriate sentence in a criminal case.  They

18  used to be mandatory.  They're not mandatory anymore.  So I

19  don't have to follow them, but I do have to consider them

20  when I'm fashioning an appropriate sentence.

21          So that makes them important even though they're

22  not binding.  Have you and your lawyers talked about the

23  sentencing guidelines and how they might apply in your case?

24          THE DEFENDANT:  Yes.

25          THE COURT:  Do you understand that I will not be

1    able to determine your guideline sentencing range until after

2    the probation office has prepared a presentence report?

3                    THE DEFENDANT:  Yes.

4                    THE COURT:  Do you understand that a presentence

5    report will be prepared, and it will contain information

6    about you, any criminal history and the offense to which

7    you're pleading guilty today?

8                    THE DEFENDANT:  Yes.

9                    THE COURT:  You understand the report will also

10   contain a recommended application of the sentencing

11   guidelines?

12                   THE DEFENDANT:  Yes.

13                   THE COURT:  Do you understand that once that report

14   is prepared, you, the government, your lawyers will all have

15   the chance to read the report.  You'll have the opportunity

16   to challenge any facts in the report, to challenge the

17   application -- the recommended application of the sentencing

18   guidelines?

19                   THE DEFENDANT:  Yes.

20                   THE COURT:  You understand again, although I'm not

21   required to follow the sentencing guidelines, I do have to

22   consider them when thinking about an appropriate sentence?

23                   THE DEFENDANT:  Yes.

24                   THE COURT:  Do you understand that under the

25   guideline system I will have the authority to go below the

1    guideline range, but I also have the authority to go above

2    the guideline range so long as I'm beneath the statutory

3    20-year maximum.

4              Do you understand that?

5              THE DEFENDANT:  Yes.

6              THE COURT:  Do you understand that you will not be

7    permitted to withdraw your guilty plea if I sentence you to

8    something different than what you expect or what your lawyers

9    told you to expect or what the government might have led you

10   to believe you were going to receive.  In other words,

11   generally speaking once you plead guilty it's done.

12             Do you understand that?

13             THE DEFENDANT:  Yes.

14             THE COURT:  Do you understand that parole has been

15   abolished, and if you're sentenced to prison you will not be

16   released early on parole?

17             THE DEFENDANT:  Yes.

18             THE COURT:  Do you understand that any victim of

19   your crime will have the right to participate in your

20   sentencing hearing either in writing or by coming to court

21   and participating orally?

22             THE DEFENDANT:  Yes.

23             THE COURT:  Do you understand that under some

24   circumstances you or the government or both may have the

25   right to appeal any sentence that I impose?

1          THE DEFENDANT:  Yes.

2          THE COURT:  I'm sure you understand this, but you

3     don't have to plead guilty.  You can go to trial on this

4     case.  You have co-defendants that are still intending on

5     going to trial.  If you do decide to plead guilty, you waive

6     your right to a trial and all the rights that go along with

7     your right to a trial.

8          Before I let you waive those rights, I want to make

9     sure that you understand what rights you have and what you

10    will be giving up.  Okay?  Do you understand you have the

11    right to plead not guilty to any crime charge against you and

12    go to trial?

13         THE DEFENDANT:  Yes.

14         THE COURT:  Do you understand that you'd have the

15    right to a trial by jury?

16         THE DEFENDANT:  Yes.

17         THE COURT:  Do you understand that at trial you'd

18    be presumed to be innocent and the government would have to

19    prove your guilt beyond a reasonable doubt?

20         THE DEFENDANT:  Yes.

21         THE COURT:  Do you understand that at trial you'd

22    have the right to assistance of your lawyers?

23         THE DEFENDANT:  Yes.

24         THE COURT:  Do you understand that you'd have the

25    right to see and hear all the witnesses against you and have

1    them cross-examined on your behalf?

2              THE DEFENDANT:  Yes.

3              THE COURT:  Do you understand you have the right,

4    if you chose to exercise it, to testify and put on evidence

5    on your own behalf?

6              THE DEFENDANT:  Yes.

7              THE COURT:  And we'd give you the subpoena power

8    which would give you the ability to require witnesses to come

9    to court and testify on your behalf if that's what you wanted

10   them to do?

11             THE DEFENDANT:  Yes.

12             THE COURT:  Do you understand that you also would

13   have the right not to testify and not to put on evidence if

14   that's what you wanted to do?

15             THE DEFENDANT:  Yes.

16             THE COURT:  Do you understand that if you decided

17   not to testify and not to put on evidence, those facts could

18   not be used against you?

19             THE DEFENDANT:  Yes.

20             THE COURT:  Do you understand that by entering a

21   plea of guilty here today, assuming I accept it, there will

22   be no trial and all the rights we just talked about will be

23   gone?

24             THE DEFENDANT:  Yes.

25             THE COURT:  Mr. Wyshak or anyone else, can you

1   please summarize the charges against the defendant.  He's

2   going to give the elements of the offense.  These are the

3   elements that the government would have to prove beyond a

4   reasonable doubt for you to be convicted at trial.  Okay?

5           MR. WYSHAK:  Yes, Your Honor.  If the case went to

6   trial, the government would prove that the defendant

7   conspired to participate in the conduct of the affairs of an

8   enterprise, which in this case is Insys Therapeutics, for a

9   pattern of racketeering that consisted of multiple acts of

10  mail fraud, wire fraud and unlawful distribution of a

11  controlled substance, and that the defendant agreed that one

12  of the members of this conspiracy will commit two acts of

13  racketeering.

14          During the time period alleged in the indictment,

15  Insys Therapeutics' sole product was Subsys, which was a

16  Fentanyl spray approved by the FDA for use by cancer patients

17  suffering from breakthrough pain.  This was a very expensive

18  drug.  It's a Schedule 2 narcotic.  As we know fentanyl is a

19  very dangerous drug if abused.

20          Insys, the enterprise in this case, did business in

21  the District of Massachusetts.  It employed sales

22  representatives and a district manager and solicited

23  professionals to prescribe Subsys in Massachusetts.  The

24  evidence would show that the defendant was employed by the

25  enterprise from 2012 through 2015.  And in June -- I'm sorry.

1          THE COURT:  Mr. Wyshak, are you giving me the

2    elements of the offense or the factual basis for the plea?

3          MR. WYSHAK:  Oh.

4          THE COURT:  I want the elements of the offense for

5    him, please.

6          MR. WYSHAK:  Okay.  The elements of the offense

7    would be that the defendant conspired to participate in the

8    affairs of an enterprise through a pattern of racketeering

9    activity and agreed that one or more of the members of the

10   conspiracy were to commit two predicate acts.

11         THE COURT:  So that is what the government would

12   have to prove.  Do you have any questions about that?

13         THE DEFENDANT:  No, Your Honor.

14         THE COURT:  I assume since, I take it from what

15   just transpired that Mr. Vien is familiar with the elements

16   of the offense and has discussed those with you before?

17         THE DEFENDANT:  Yes.

18         THE COURT:  Now I'm going to turn to Mr. Wyshak and

19   ask him to give the factual basis for the plea.  He can pick

20   up where he left off.  That was what they had to prove.  This

21   is how he would expect to prove it if the case were to go to

22   trial.  So when he's done, I'm going to ask you if there's

23   anything that he has said that you disagree with.  So you'll

24   pay attention and let me know if there's anything that he

25   says that you think is incorrect.

1      MR. WYSHAK:  So as I was saying, Your Honor, the

2   defendant was employed by the enterprise from approximately

3   2012 through 2015, and he became vice president of sales in

4   approximately September 2012.  In that capacity and at the

5   direction of his superiors, John Kapoor and Michael Babich,

6   who are co-conspirators in this case, the defendant conspired

7   with his co-defendants and others to use the Insys speaker

8   program as a vehicle to bribe doctors and other clinicians to

9   prescribe Subsys for their patients rather than prescribing

10  competitive drugs.

11      The evidence would show that over the time period

12  alleged in the indictment that some of these speakers were

13  paid over $200,000.  The scheme worked as follows:  Medical

14  professionals involved in pain management were targeted by

15  the Insys sales force.  Insys sales reps would promise these

16  individuals the opportunity to become speakers for Insys if

17  they wrote prescriptions for Subsys which was the fentanyl

18  spray drug manufactured by Insys.

19      The more prescriptions that these speakers wrote

20  for Subsys, the more speaking opportunities that they were

21  awarded.  As evidence of the abuse of the speaker program,

22  the defendants Kapoor and Babich instructed Insys employees

23  to track the volume of prescriptions written by participants

24  in the speaker program.

25      They rewarded prolific writers with more speaking

1    opportunities and punished those who were not writing a

2    sufficient volume of prescriptions by removing them from the

3    speaker program.  Not only were they encouraged to write

4    prescriptions for Subsys, but they were encouraged to write

5    ever-increasing dosages of Subsys and were awarded with more

6    speaking opportunities for doing so.

7         The Insys commission protocol, in other words, how

8    they paid their sales reps, for a period of time rewarded the

9    sales staff if they could get the doctors, the medical

10   professionals, to write higher doses of this fentanyl product

11   Subsys.

12        Other than the speaking programs, the defendants

13   and their co-conspirators awarded or bribed these doctors in

14   other fashions.  One way was to pay the salaries of employees

15   on the doctor's staff so they became employees of Insys.

16   Other ways were to employ girlfriends, relatives of these

17   doctors, giving them jobs for Insys or paying them to work on

18   the doctor's staff.

19        Often these programs were poorly attended and were

20   essentially used as an excuse for the doctors and their

21   friends to have a free meal and dinner paid for by Insys.

22   And essentially, Your Honor, the conspiracy involved the

23   defendant's intent to use the speaker program to bribe

24   medical professionals to prescribe Subsys rather than any

25   other medication.

1          The defendant in this case, the evidence would

2     show, conspired with his regional sales managers, Joseph

3     Rowan, Richard Simon and Sunrise Lee to implement the

4     aforementioned practices.  As a result of this scheme,

5     insurers were defrauded by paying reimbursements for Subsys,

6     a more expensive drug than its nearest competitor, which was

7     often prescribed when medically unnecessary and

8     inappropriate.

9          The evidence would show that the U.S. mails were

10    used in furtherance of the scheme by Insys which paid the

11    participants in the speaker program by checks that were

12    mailed by Insys to the speakers and insurance who mailed

13    checks in reimbursement for these Insys prescriptions.

14         The U.S. mails were also -- and wires were also

15    used by Insys to directly defraud insurers by provide

16    providing false and misleading information to the insurers.

17    The defendants Kapoor and Babich created what became known as

18    the Insys Reimbursement Center.  And the employees at the

19    reimbursement center essentially provided false information

20    to insurance companies in order to obtain reimbursements from

21    the insurance companies.

22         The defendant Michael Gurry in this case managed

23    the IRC.  Rather than having the employees essentially of the

24    practitioner communicate with the insurers to obtain

25    reimbursement, Insys took this upon themselves by creating

1   this IRC.  They misrepresented who they were to insurers and

2   provided false information regarding the medical history and

3   symptoms of the patients who were prescribed this Subsys.

4          Thus in orchestrating and participating in these

5   schemes, the defendant and co-conspirators deprived Subsys

6   patients of the honest services of their respective

7   practitioners.  And many Subsys patients as a result were

8   inappropriately prescribed and over-prescribed this

9   medication which was highly addictive and dangerous.  That's

10  what the government would prove.

11         THE COURT:  You'll have to break this down a little

12  bit more for me because, for example, with the reimbursement

13  center, I didn't hear you say that he had any knowledge of

14  that.  Is it your position that he had knowledge of the

15  reimbursement center?

16         MR. WYSHAK:  Yes.  As a member of the conspiracy,

17  he was aware of the activities of the reimbursement center.

18  And again if he didn't directly engage in the criminal

19  conduct, as a member of the conspiracy it was reasonably

20  foreseeable by him that this criminal activity would occur by

21  other employees of Insys.

22         THE COURT:  On the medically inappropriate

23  prescriptions, those were generally between the doctor and

24  the patient, right?  What was his role, or did he know, what

25  was foreseeable to him with regard to the medically

1    inappropriate --

2          MR. WYSHAK:  I think the evidence will show, Your

3    Honor, that members of the conspiracy understood that by

4    inducing the medical practitioners to prescribe this drug --

5    not only prescribe it, but prescribe it in higher dosages,

6    that the medical community would overprescribe or

7    mis-prescribe the drug.  There was a general understanding

8    among the members of the conspiracy that that would be the

9    result of their criminal activities.

10          THE COURT:  Prescribe medically unnecessary?  I

11    just want to understand.  You gave a very broad factual

12    basis.  I just want to make sure I understand what this

13    defendant knew and what his role was.  I want to drill down a

14    little bit.  There's a difference between having a doctor

15    that's prescribing opioids prescribe this opioid and have a

16    doctor prescribe opioids where they're not necessary.

17          MR. WYSHAK:  Correct.

18          THE COURT:  What is the evidence of one rather than

19    the other?

20          MR. WYSHAK:  I think to satisfy the elements of the

21    crime, I think all the government really needs to prove is

22    that the defendants bribed doctors to prescribe their drug as

23    opposed to other drugs.  But, in fact, the evidence will show

24    that while the drug was supposed to be prescribed for

25    breakthrough cancer pain, and I understand doctors have the

1    ability to prescribe it for other purposes, that several of

2    the doctors or medical professionals will testify at this

3    trial, will testify that if they were not being bribed to

4    prescribe this drug and to prescribe it in ever-increasing

5    dosages, that they wouldn't have prescribed it to particular

6    patients or prescribed it at that dosage.

7              And I think that the defendant and his

8    co-conspirators understood that that was the reasonably

9    foreseeable consequence of their actions.

10             THE COURT:  Okay.  And to the speaker program, it's

11   okay to pay doctors to run speaker programs.  And it's okay

12   to select as the doctors that are going to run their speaker

13   programs the high prescribers on the theory that they're the

14   ones most familiar with the drug.  I understand you're

15   telling me that the speaker program was run in a different

16   way.  Can you give me that again?

17             MR. WYSHAK:  Yes.  Essentially the speaker program

18   was designed to induce the speakers to prescribe this drug.

19   Instead of tracking, for example, the evidence will show that

20   rather than tracking the performance of attendees who

21   attended these speaker programs to determine whether or not

22   the program was successful, the defendants focused on

23   tracking the prescription activity of their speakers and

24   constantly advised the speakers that if they wanted more

25   speaking opportunities, they needed to prescribe more of

1    Subsys to their patients.  Not only write more prescriptions,

2    but write those prescriptions in higher dosages, which again

3    the higher dosages cost significantly more money, cost the

4    insurance companies more money to reimburse and resulted in

5    more profits to the enterprise in this case.

6              And again there will be medical professionals who

7    will testify as well as employees, people who participated in

8    the field selling this drug, that they did, in fact, induce

9    these doctors to write prescriptions with the opportunity for

10   more speaker programs, which more often than not were shams,

11   not well attended, turned out to be private little parties

12   for the doctor's staff and the Insys reps.  Never really

13   designed to educate the medical community about this

14   particular drug.

15             THE COURT:  Okay.  After this somewhat extended

16   discussion, I think that the facts that he described are

17   sufficient to support the plea.  But before I firm up my

18   thinking on that, is there anything that he said that you

19   disagree with?

20             THE DEFENDANT:  No, Your Honor.

21             THE COURT:  Okay.  So I am prepared to take the

22   change of plea.  Before we do that, I just want to talk about

23   this cooperation agreement with you and make sure you fully

24   understand.  You don't have a plea agreement with the

25   government, but you do have this cooperation agreement,

1    correct?

2              THE DEFENDANT:  Yes.

3              THE COURT:  As you know, I have to think about the

4    sentencing guidelines when I fashion the sentence.  They're

5    no longer mandatory, but they are sort of my starting point.

6    What your cooperation agreement with the government says is

7    that if you cooperate with them, provide substantial

8    assistance in the investigation and prosecution of others,

9    when it comes time for your sentencing, they will stand up

10   and describe to me what you did to cooperate and why it was

11   helpful in the investigation and prosecution of others.

12             Do you understand all that?

13             THE DEFENDANT:  Yes.

14             THE COURT:  Do you have any questions about the

15   cooperation agreement?

16             THE DEFENDANT:  No, Your Honor.

17             THE COURT:  This idea of what constitutes

18   substantial assistance is all within the discretion of the

19   government to decide.  Do you understand that?

20             THE DEFENDANT:  Yes.

21             THE COURT:  So you may think you provided

22   substantial assistance, but they don't have to honor the

23   terms of the cooperation agreement unless they determine that

24   you've provided substantial assistance.  Do you understand

25   that?

1          THE DEFENDANT:  Yes.

2          THE COURT:  And you understand that if the

3    government comes to the conclusion that you're not being

4    truthful or you haven't provided enough cooperation or that

5    you're holding back information, that they will believe free

6    to take the position that you haven't met the terms of the

7    cooperation agreement, and they won't give you the benefit of

8    that bargain.

9          Do you understand that?

10          THE DEFENDANT:  Yes, Your Honor.

11          THE COURT:  Anything else that anyone wants me to

12    colloquy on with regards to the cooperation agreement?

13          MR. WYSHAK:  No, Your Honor.

14          MR. VIEN:  No, Your Honor.

15          THE COURT:  All right.  I am prepared to go ahead

16    and take the change of plea.  Mr. Wyshak, any reason why I

17    shouldn't accept the plea in this case?

18          MR. WYSHAK:  No, Your Honor.

19          THE COURT:  Mr. Vien?

20          MR. VIEN:  No, Your Honor.

21          THE COURT:  And you are satisfied that the

22    government has -- that the factual basis along with the

23    elements of the offense they laid out are sufficient to

24    support a conviction in this case?

25          MR. VIEN:  Yes, Your Honor.  I am satisfied by

1    their factual basis.  I am aware that there are even more

2    facts that the government has not provided to the Court that

3    supply a factual basis and a good motivation and reason for

4    the defendant to plead guilty in this case.

5           THE COURT:  Okay.  I accept that.  Obviously they

6    have to have articulated a sufficient factual basis here, but

7    I'm understanding you to say that they have done that, and

8    that if for some reason I found that was insufficient, they

9    would have additional information that they could give me to

10   further support it.

11          MR. VIEN:  That's accurate, Your Honor.

12          THE COURT:  Okay.  All right.  It's the finding of

13   the Court in the case of United States versus Burlakoff that

14   the defendant is fully competent and capable of entering an

15   informed plea; that he's aware of the nature of the charges

16   and the consequences of the plea; and that any plea of guilty

17   will be knowing and voluntary supported by an independent

18   basis in fact containing each of the essential elements of

19   the offense charged.

20          Karen, can you take the plea, please.

21          THE CLERK:  Can you please stand.  Mr. Burlakoff,

22   in criminal matter 16-10343 you are charged in Count 1 of the

23   superseding indictment to which you have previously pled not

24   guilty.  Do you now wish to change your plea?

25          THE DEFENDANT:  Yes.

1          THE CLERK:  As to Count 1, you are charged with

2    racketeering conspiracy in violation of Title 18, United

3    States Code Section 1962(d).  How do you wish to plead to

4    Count 1, guilty or not guilty?

5          THE DEFENDANT:  Guilty.

6          THE CLERK:  Thank you.  You may be seated.

7          THE COURT:  Mr. Burlakoff, as we've discussed

8    there's going to be a written presentence report that's

9    prepared by probation to help at the time of sentencing.

10   You'll be asked to give information for that report.  You

11   have the right to have your lawyers present when you're

12   interviewed for that report.  It's completely up to you.

13          You may decide you want them there or you don't

14   want them there, but understand that it is your right to have

15   them there if that's what you want to do.  It's super

16   important that the report is accurate.  It can affect what

17   sentence you receive.  If you're sent to prison, it can

18   affect where you're sent.  It can affect what kind of

19   programming is available to you there.

20          Any mistakes that you find in the report should be

21   corrected even if they look minor to you.  You'll have a

22   chance to read the report.  Your lawyers will have a chance

23   to read the report, and you'll all have a chance to make

24   those corrections and file any objections prior to the time

25   of sentencing.

1          At sentencing you and your lawyer will both have

2     the opportunity to stand up and speak on your behalf.  I tell

3     about it now because I'm always interested in what defendants

4     have to say when I'm sentencing them.  So I hope that you'll

5     think about speaking.  Although that's a decision that you'll

6     make with your counsel.  And if you do decide to speak, I

7     hope you'll give some thought to what you might want to say

8     at that point.

9          I'm going to refer you to probation for the

10    presentence investigation, the preparation of the report.  It

11    usually takes about 12 weeks.  My guess is you're going to

12    ask to have the sentencing deferred.  But I'm thinking we

13    should get the report prepared, and then we can put off the

14    sentencing if that seems appropriate closer to.  Does that

15    seem right?

16          MR. WYSHAK:  Yes, Your Honor.  We'd like to have a

17    date possibly in late May or June for sentencing.

18          THE COURT:  I'm going to order the report prepared.

19    What's your view on a sentencing date?

20          MR. VIEN:  Your Honor, I fully anticipate that

21    we'll be continuing the sentencing, or asking the Court to

22    continue the sentencing date.  I don't mean to be glib, but

23    I'm not sure it matters when you set it for right now.  I

24    think realistically when do I think he'll be sentenced?  Just

25    based on history of the Court, I think he should probably be

1    sentenced, assuming that other defendants are convicted,

2    which I assume they will be, after their sentence, so I would

3    say late July would be a good time.

4           THE COURT:  Just as a matter of practicality, let's

5    get a date on the calendar.  Let's schedule it for when the

6    trial is scheduled to be over.  Then if you want to move to

7    continue it, that's fine.

8           Karen, why don't you give them a date.

9           THE CLERK:  How about May 29 at 2 p.m.?

10          MR. VIEN:  That's fine with the defendant, Your

11   Honor.

12          THE COURT:  Now, he is currently released on

13   conditions.  Give me one second here.  It looks like you're

14   being supervised -- you were supervised in North Carolina.

15   Now you're being supervised in Florida; is that right?

16          THE DEFENDANT:  Yes.

17          MR. VIEN:  Yes, Your Honor.  The report from

18   probation, there's a typo in it.  It says Middle District of

19   Florida, he's actually being supervised, not that it really

20   matters, it's in the Southern District of Florida.

21          THE COURT:  He's been fully compliant with the

22   conditions of his release.  There's no new criminal activity.

23   What's the government's position on release conditions?

24          MR. WYSHAK:  To continue the current conditions of

25   release, Your Honor.

1          THE COURT:  Mr. Vien?

2          MR. VIEN:  That's our recommendation, Your Honor.

3          THE COURT:  Okay.  Mr. Burlakoff, you're going to

4     be released on the same conditions that you've been released

5     on.  You're very ably represented, and I'm sure this goes

6     without saying, this is kind of an important time for you to

7     drive in the speed limit, not get into any other trouble

8     while this case is pending.  Okay?

9          And we will see you in May if not before.  Anything

10    else today, Mr. Wyshak?

11         MR. WYSHAK:  No, Your Honor.

12         THE COURT:  Mr. Vien?

13         MR. VIEN:  No, Your Honor.  Does Mr. Gelhaar have

14    something?

15         MR. GELHAAR:  No, Your Honor.

16         THE COURT:  Come on, Mr. Gelhaar.  It's a long

17    period of time for you to sit silent.

18         MR. GELHAAR:  I have nothing to say other than I'm

19    here solely for purposes of adult supervision.

20         THE COURT:  All right.  Then the case is recessed

21    for the day.  Thank you all.

22         THE CLERK:  Court is adjourned.

23         (Court recessed at 11:05 a.m.)

24

25

- - - - - - - - - - - -

CERTIFICATION


        I certify that the foregoing is a correct

transcript of the record of proceedings in the above-entitled

matter to the best of my skill and ability.




/s/ Joan M. Daly                    November 29, 2018

_____             _____

Joan M. Daly, RMR, CRR              Date
Official Court Reporter